ORIGINAL

# In the United States Court of Federal Claims

No. 03-2264C
Filed August 25, 2004
**NOT TO BE PUBLISHED**

FILED
AUG 2 6 2004
U.S. COURT OF FEDERAL CLAIMS

A.F.T.E.R., INC., *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

Emergency Low Income Housing Preservation Act of 1987, 42 U.S.C. § 1472(c);
Statute of Limitations;
Tucker Act, 28 U.S.C. § 1491(a)(1);
28 U.S.C. § 2501;
RCFC 12(b)(1);
RCFC 12(b)(6).

**Jeff Eckland,** Eckland & Blando, Minneapolis, Minnesota, for plaintiffs.

**Shalom Brilliant,** United States Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

**Braden, *Judge***

## RELEVANT STATUTORY BACKGROUND

In 1962, Congress amended the Housing Act of 1949 ("the Housing Act") so that the Farmers Home Administration ("FmHA") could make direct loans to private nonprofit corporations and consumer cooperatives to encourage their purchase of rental housing for elderly persons and families of low or moderate income in rural areas. *See* Senior Citizens Housing Act of 1962, Pub. L. No. 87-723, 76 Stat. 670 (1962) (codified, as amended, at 42 U.S.C. § 1485). In 1966, this loan program was expanded to include loans for rental housing that could be used by "other persons and families of low income." Pub. L. No. 89-754, § 804, 80 Stat. 1255, 1282 (1966). Many of the loan applicants, however, began to prepay their mortgages with the consequence of undermining the financial viability of the program. *See* H. Rep. No. 96-154, 96th Cong., 1st Sess. 43 (1979), *reprinted in* 1987 U.S.C.C.A.N. 2317, 2359. Therefore, in 1979, the Housing and Community Development Amendments were enacted to prohibit FmHA from accepting loan prepayments, unless the owner was required to maintain the low-income cost of the rental housing for either a 15-year or 20-year period from the date of the loan. *See* Pub. L. No. 96-153, § 503(b), 93 Stat. 1101, 1134-35 (1979). In 1980, Congress restricted prepayments only to loans entered after December 21, 1979.

*See* Housing and Community Development Act of 1980, Pub. L. No. 96-399, § 514, 94 Stat. 1614, 1671-72 (1980). In 1987, Congress again amended the Housing Act by enacting the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") to impose restrictions on the prepayment of mortgages entered into before December 21, 1979. *See* Pub. L. No. 100-242, 101 Stat. 1877, 1886, as amended, 42 U.S.C. § 1472(c). Subsequently, prepayment restrictions were extended by the Housing and Community Development Act of 1992 for the period December 21, 1979 to December 15, 1989. *See* Pub. L. No. 102-550, § 712, 106 Stat. 3672, 3841 (1992).

Pursuant to the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub. L. No. 103-354, § 233, 108 Stat. 3178 (1994), the Secretary of the Department of Agriculture was authorized to establish a successor to the FmHA known as Rural Housing and Community Development Services ("RHCDS"). Effective January 30, 1996, RHCDS changed its name to Rural Housing Service ("RHS"). *See* 61 Fed. Reg. 2899 (1996). FmHA, as well as its successors, are referenced herein as FmHA.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

On September 30, 2003, 118 plaintiffs filed a complaint in the United States Court of Federal Claims alleging that the enactment of ELIHPA and the Housing and Community Development Act of 1992 effectuated a breach of contract and a taking of plaintiffs' real and intangible property interests without just compensation. *See* Amend. Compl. at ¶ 3.

All of the plaintiffs in this action are alleged to have entered into contracts with FmHA for loans to provide rental housing for low- and moderate-income persons. *See* Amend. Compl. at ¶ 1. The precise terms of the contracts apparently varied, but all provided that plaintiffs could terminate participation in the housing program "at any time," upon prepayment of the federally made or insured mortgage. *Id.* at ¶ 2. Certain plaintiffs entered into these contracts before December 21, 1979 ("pre-1979 FmHA contracts"). *See* Amend. Compl. at ¶¶ 5, 7. Other plaintiffs entered into these contracts on or after December 21, 1979, but prior to December 15, 1989 ("post-1979 FmHA contracts"). *Id.* Plaintiffs that entered into pre-1979 FmHA contracts were entitled to terminate their participation in the housing program at any time by exercising their option to prepay, so that rents could be increased or the property sold. *Id.* at ¶¶ 5-6. Plaintiffs that entered into post-1979 FmHA contracts could prepay, but only after agreeing to a restriction requiring that the property be operated as low-rent housing for a period of fifteen or twenty years from the date of loan origination. *Id.* at ¶¶ 7-9.

All plaintiffs (or their predecessors-in-interest) are alleged to have entered into separate Loan Agreements with FmHA that imposed significant obligations concerning potential tenants, maximum rents, profits, maintenance, and the financial operation of each project. *See* Amend. Compl. at ¶ 17. All plaintiffs also are alleged to have executed a Promissory Note and Real Estate Mortgage contemporaneously with the Loan Agreement. *Id.* at ¶ 18. In executing a Promissory Note, plaintiffs agreed to pay FmHA the entire principal due under the Loan Agreement in scheduled installments, together with interest at a specified rate. *Id.* The Promissory Note also provided for "Prepayments

of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower." *Id.*

Under the Promissory Notes and Loan Agreements, plaintiffs were required to: (i) construct and maintain housing in accordance with FmHA's specifications; (ii) provide housing for low to moderate-income individuals; (iii) charge rents no higher than those permitted by the FmHA; (iv) make timely payments on their mortgages; and (v) maintain a minimum amount of cash reserves. *Id.* at ¶ 19. Plaintiffs further were obligated to operate these projects according to FmHA requirements, for the period of their indebtedness and fulfill other obligations under the Promissory Note, Real Estate Mortgage, and any other related agreements. *Id.* at ¶ 20. Upon full payment, plaintiffs were entitled to terminate these contracts at any time, so long as they (or their successors-in-interest) continued to comply with the restrictive-use clause, which typically was included in the language of the Real Estate Mortgage. *Id.* at ¶¶ 21-22.

On December 1, 2003, the Government moved to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. *See* Gov't Mot. to Dismiss. On February 27, 2004, plaintiffs filed an amended complaint. On February 27, 2004, plaintiffs filed a response to the Government's motion to dismiss. On April 9, 2004, the Government filed a reply.

## DISCUSSION

### 1. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491(a)(1). The court's jurisdiction may be invoked only if a complaint is filed within six years after "such claim first accrues." *See* 28 U.S.C. § 2501; *see also Hopland Band of Pomo Indians* v. *United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988) (holding that the six-year time bar is "a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity.").

The United States Supreme Court has held:

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure.

*McNutt* v. *General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Hopland,* 855 F.2d at 1576-77.

In *Franconia Assocs.* v. *United States*, 536 U.S. 129 (2002), the United States Supreme Court considered the statute of limitations in the context of a breach of contract case filed under the Tucker Act that allegedly arose from the enactment of ELIHPA. Therein, the Court held "breach would occur, and the six year limitations period would commence to run, when a borrower tenders prepayment and the Government then dishonors its obligation to accept the tender and release its control over the use of the property that secured the loan." *Id.* at 134.

**2. Standard Of Review.**

**a. Motion To Dismiss Pursuant To RCFC 12(b)(1).**

When deciding a motion to dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), the court may examine relevant evidence in order to resolve any factual disputes. *See, e.g., Moyer* v. *United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999); *Cedars-Sinai Med. Ctr.* v. *Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied sub nom.*, *Cedars-Sinai Med. Ctr.* v. *O'Leary*, 512 U.S. 1235 (1994). Jurisdiction starts with the complaint, which must be well-pleaded in that "it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley* v. *United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citing *Franchise Tax Bd.* v. *Construction Laborers Vacation Trust*, 463 U.S. 1 (1983)).

**b. Motion To Dismiss Pursuant To RCFC 12(b)(6).**

When deciding a motion to dismiss for failure to state a claim, pursuant to RCFC 12(b)(6), the court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the non-movant's favor. *See Brubaker Amusement Co., Inc.* v. *United States*, 304 F.3d 1349, 1355 (Fed. Cir. 2002) ("A plaintiff fails to state a claim upon which relief may be granted if the plaintiff cannot assert a set of facts that would support its claim. [In the context of a motion to dismiss for failure to state a claim], all well-pled factual allegations are true and . . . all reasonable inferences [are drawn] in favor of the nonmovant.") (citations omitted).

**3. Resolution Of Government's Motion To Dismiss.**

To date, plaintiffs have failed to allege sufficient facts to demonstrate that their claims were filed within the six-year statute of limitations. The amended complaint provides only that:

> All plaintiffs intended, upon entering into their contracts with the FmHA, to exercise their prepayment right and terminate their participation in the Section 515 program prior to the expiration of their full mortgage terms. All of the pre-1979 plaintiffs intended to prepay within six years prior to the filing of this amended complaint on February 27, 2004, and would have done so within said six-year period of time but for the government's wrongful repudiation. All of the post-1979 plaintiffs, who constitute the great majority of owners in this action, intended to prepay upon the

> expiration of the twenty year restrictive use clause applicable to their properties (none of which expired prior to December 1999), and would have done so but for the government's wrongful repudiation.
>
> Thus, all of the plaintiffs in this action filed suit within six years after (1) the date that they intended to prepay their mortgages and terminate their contracts with the FmHA, and (2) the date that they would have prepaid but for the government's repudiation of their contract rights. In addition, all plaintiffs who submitted written prepayment applications to the agency under the repudiating legislation filed suit within six years after receiving a final decision from the agency rejecting their requests to prepay without restrictions.
>
> All plaintiffs were ready, willing, and able to pay off their mortgage balances at the time they intended to exercise their right to prepay and the leave the Section 515 program.
>
> As a consequence of the Government's conduct, *certain plaintiffs have submitted applications for prepayment and/or an offer of incentives from the Government.* The Government has in every instance refused to accept prepayment from plaintiffs pursuant to the provisions of their contracts. Some plaintiffs have been compelled to change their position to their detriment in reliance upon the Government's repudiation, including accepting incentives and transferring their properties to third parties in lieu of a sale at fair market value. In light of the Government's repudiation, other plaintiffs have foregone submitting any prepayment application because of the futility of doing so.
>
> As a consequence of the Government's conduct, certain plaintiffs have met with, or otherwise made inquires of, FmHA officials regarding prepayment of their loans. Said Government officials have repeatedly represented to plaintiffs that prepayment will not be accepted. In some cases, Government officials have stated that it is not worthwhile even to file a prepayment application.

Amend. Compl. at ¶¶ 42-46.

As the Government correctly argues, plaintiffs have the burden to establish "*when* a borrower tenders prepayment and the Government then dishonors its obligation to accept the tender and release its control over use of the property that served the loan." Gov't Mot. to Dismiss at 11 (quoting *Franconia*, 536 U.S. at 133) (emphasis added). Plaintiffs have failed to meet this burden.

Therefore, the court has determined the interest of justice requires that plaintiffs have an opportunity to further amend their complaint on or before October 30, 2004 properly to allege sufficient facts to establish that their claims comply with the six year statute of limitations under the Tucker Act. If plaintiffs are able to establish that their claims are not time barred, the court will

consider and adjudicate the Government's remaining bases for dismissal without further briefing. If plaintiffs are not so able to further amend their complaint, the court will dismiss it with prejudice.

## CONCLUSION

The Clerk of the Court is ordered to enter an order consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

**SUSAN G. BRADEN**
**Judge**